UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE INTERNET PROTOCOL ADDRESS SERVICED BY AMAZON.COM, INC. | ML No. ML-21-277<br><br>Filed Under Seal |

*Reference:*   DOJ Ref. # CRM-182-74576; Subject Account: IP address 35.171.165.58

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Council of Europe, Convention on Cybercrime, *opened for signature* Nov. 23, 2001, T.I.A.S. 13174, C.E.T.S. 185 (entered into force for the United States Jan. 1, 2007) (hereinafter, the "Convention"), to execute a request from the Republic of Costa Rica ("Costa Rica").  The proposed Order would require Amazon.com, Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Tumwater, Washington, to disclose certain records and other information pertaining to the PROVIDER account associated with Internet Protocol ("IP") address 35.171.165.58, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order.  In support of this application, the United States asserts:

### LEGAL BACKGROUND AND JURISDICTION

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.  This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3.  Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1). This application to execute Costa Rica's request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application. The undersigned has reviewed the request and

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

has confirmed that it was submitted by authorities in Costa Rica in connection with a criminal investigation and/or prosecution.

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5. Authorities in Costa Rica are investigating an unknown suspect(s) for cybercrime offenses, which occurred July 24, 2019, in violation of the criminal law of Costa Rica, specifically, Article 217 bis of the Costa Rican Penal Code. A copy of the applicable law(s) is appended to this application. The United States, through the Office of International Affairs, received a request from Costa Rica to provide the requested records to assist in the criminal investigation and/or prosecution. Under the Convention, the United States is obligated to render assistance in response to the request.

6. According to authorities in Costa Rica, on July 24, 2019, in Costa Rica, at approximately 1:30 p.m. at the *Banco Nacional de Costa Rica* (translated to English, National Bank of Costa Rica) (the "Bank"), the Victim, a Bank customer, went inside one of the Bank's branches to make a deposit. The Victim approached one of the Bank's computer terminals, entered her password, and received a message informing her that her password was invalid. The

Victim then tried to access the Bank's mobile banking through her cellphone and received another notification that her password was invalid.

7. Later that day, the Victim received various text messages from the Bank reporting unauthorized debit transactions. At 1:44 p.m., the Victim received a text message from the Bank confirming a debit payment of 522,000 colons. At 1:49 p.m., the Victim received a text message from the Bank confirming a debit payment of 296,960 colons. At 1:52 p.m., the Victim received a text message from the Bank confirming a debit payment of 93,960 colons. At 1:53 p.m., the Victim received a text message from the Bank confirming a debit payment of 296,960 colons. At 2:14 p.m., the Victim received a final text message from the Bank confirming a debit payment of 296,960 colons. The Victim's fraudulent loss amounted to approximately 1,506,000 colons (equivalent in USD to 2,598).

8. The Victim filed a complaint with Costa Rican authorities. Costa Rican authorities obtained the Victim's Bank account transaction history and noticed that the Victim's bank account ledger revealed that the five fraudulent payments were credited to "Mendez Esquivel Nelkin," via specific SafetyPay transaction numbers, which the Victim had not authorized.

9. On October 17, 2019, Costa Rican authorities wrote to SafetyPay to request the IP address(es) involved in the fraudulent debit transactions. On October 22, 2019, SafetyPay responded that to Costa Rican authorities that IP address 35.171.165.58 has been used to conduct the transactions from 13:52 to 14:14 GMT-6, hosted by PROVIDER.

10. Costa Rican authorities now request certain records from PROVIDER relating to IP address 35.171.165.58, in order to identify and locate the suspect(s).

**REQUEST FOR ORDER**

11.     The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help authorities in Costa Rica identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

12.     The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for two years from the date of the Court's Order. *See* 18 U.S.C. § 2705(b); 18 U.S.C. § 3512(a). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[2] In addition, this Court has the authority under 18 U.S.C. § 3512(a) to issue "such orders as may be necessary to execute a [foreign] request," including an order to protect the confidentiality of the foreign

---

[2] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

request here.³  18 U.S.C. § 3512(a)(1); *see* Convention art. 27(3) & (8) (obligating the United States to protect information when confidentiality is requested).

13. In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible.  Accordingly, disclosure may reveal the existence, scope, and direction of Costa Rica's ongoing and confidential investigation.  Once alerted to this investigation, the potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution.  In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.  Notification could also result in the target(s) traveling to countries from which they cannot be extradited.

14. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, or other serious jeopardy to this investigation.  *See* 18 U.S.C. § 2705(b)(2), (3), (5).

15. In addition, the two-year time period for preclusion of notice is reasonable.  As explained above, these documents discuss an ongoing criminal investigation pursuant to foreign law in the requesting country.  Foreign investigations are often lengthy, and the United States

---

³ When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would insure reciprocity in response to U.S. requests for assistance in its criminal investigations.  *See, e.g.*, 155 CONG. REC. H10,093 (2009) (statement of Rep. Schiff).  Section 3512, which codified past practice in relation to the execution of foreign requests for evidence, naturally encompasses the longstanding practice of maintaining the confidentiality of the foreign investigation, where possible.  *See, e.g.*, *In re Letter of Request from the Government of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991) (secrecy in executing foreign request is "essential to protect the French Court's criminal investigation").

does not have ready access to the status of such investigations.  Additionally, during the two-year time period, the United States will need to serve the production Order on PROVIDER, obtain PROVIDER's responsive documents, resolve any issues or questions regarding the production, and send the documents to the Central Authority for mutual legal assistance requests in Costa Rica.  Costa Rica's Central Authority then will have to provide the documents to the investigating judge, prosecutor, and/or investigator assigned to the particular matter, who will need time to review the information provided and pursue any investigative leads, prior to disclosure of the specific assistance sought by Costa Rica's authorities to the account holder(s).[4]

16. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of two years (commencing on the date of the Order), unless the period of nondisclosure is later modified by the Court.

17. In this matter, the United States also requests that the instant Application and the Order be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  In addition, the Court is authorized to issue orders necessary for the execution of a foreign request, including an order to seal the instant Application and Order, to protect the confidentiality of the foreign criminal investigation.  *See* Convention art. 27(3) & (8); 18 U.S.C. § 3512(a); *see also In*

---

[4] With many foreign counterparts, the production also may need to be translated into the recipient's language.

*re Letter of Request from the Government of France*, 139 F.R.D. at 592.  For these reasons, the United States has a compelling interest in confidentiality to justify sealing the Application and Order.

        Respectfully submitted,

        VAUGHN A. ARY
        DIRECTOR
        OFFICE OF INTERNATIONAL AFFAIRS
        OK Bar Number 12199

By: _____
        Mari A. Aponte
        Senior Trial Attorney
        DC Bar Number 434421
        Office of International Affairs
        Criminal Division, Department of Justice
        1301 New York Avenue, N.W., Suite 300
        Washington, D.C.  20530
        (202) 305-9182 telephone
        (202) 514-0080 facsimile
        Mari.Aponte@usdoj.gov

## Relevant Provision(s) of the Costa Rican Penal Code

**Article 217 bis. – Cybercrime:**

A term of three to six years imprisonment shall be imposed to whom, in detriment of a . . . person, manipulates or influences, in the processing or in the result of information in an automatic information system, whether through the use of false or incomplete data, improper use of data, programming, using any computing operation or technological artifice, or, for any other action that leads in the processing of the system data or that gives as a result false, incomplete or fraudulent information, with which it is procured or obtained a patrimonial or improper benefit for himself or for another.

The penalty shall be from five to ten years imprisonment, if the conducts are committed against . . . banking information systems and financial entities, or when the author is an employee in charge of managing or give support to the system or informatic or telematic network, either, that in reason of its duties have access to said system or network, or to the electronic optics or magnetics storage.